IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Jason Brown, )
    Petitioner, )
 )
v. ) 1:12cv542 (LMB/TRJ)
 )
Eric Wilson, )
    Respondent. )

MEMORANDUM OPINION

Jason Brown, a federal inmate housed in the Eastern District of Virginia and proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the computation of his sentence by the Bureau of Prisons ("BOP"). Respondent has filed motions to dismiss the petition for lack of jurisdiction and alternatively for summary judgment, with a supporting memorandum and exhibits. On August 3, 2012, Brown was advised of his right to file responsive materials, as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Civil Rule 7(K). Brown submitted a response on September 17, 2012, to which respondent replied on September 20. For the reasons which follow, respondent's Motion for Summary Judgment will be granted, and summary final judgment will be entered in respondent's favor. Respondent's motion to dismiss will be denied as moot.

I. Background

The following material facts are uncontroverted. On August 31, 2003, Brown was arrested in Russell County, Kansas for possession of cocaine. Resp. Ex. 1,. ¶ 5.[1] Those charges

---

[1] Respondent's Exhibit 1 is the sworn declaration of John Farrar, a Correctional Programs Specialist at the BOP's Designation and Sentence Computation Center. He has been employed by

1

served as the basis for his federal offense. Id. On September 9, 2003, Kansas authorities relinquished custody to the United States Drug Enforcement Administration, and Brown was released on bond pending trial on his federal charges on September 26, 2003. Id., Att. 1. Brown subsequently entered a conditional guilty plea to one count of possession with intent to distribute approximately 7 kilograms of powder cocaine. Id., Att. 2 (Criminal Docket, United States v. Jason Brown, 5:03-CR-40094 (D. Kan.), at Dkt. 34). On October 17, 2005 the United States District Court for the District of Kansas sentenced Brown to 70 months in prison. Id., Att. 3. The Court ordered Brown to surrender for service of the sentence at the institution designated by the BOP upon notification by the Probation or Pretrial Services Officer. Id. at 2. Two days later, Brown noticed an appeal, and on February 22, 2006, the sentencing court stayed execution of Brown's sentence pending the outcome of the appeal. Resp. Ex. 1, Att. 4. In an unpublished opinion issued April 25, 2007, the Tenth Circuit Court of Appeals affirmed the denial of Brown's motion to suppress. See United States v. Brown, 234 Fed. App'x 838, 2007 WL 1241646 (10th Cir. Apr. 30, 2007).

The United States Marshals Service ("USMS") Prisoner Tracking System indicates that it became aware of the Tenth Circuit's decision on March 26, 2008. Resp. Ex. 1, ¶ 10; Att. 1 at 2. The USMS was informed of voluntary surrender dates for Brown of April 28, 2008 and November 18, 2008. Id. The USMS made several attempts to communicate those dates to Brown by certified mail. Id.; Att. 5. After Brown failed to surrender on November 18, 2008, a warrant for his arrest was issued by the sentencing court on November 21. Resp. Ex. 1, ¶ 11; Att.

---

the BOP since July, 1989, and has worked in the area of inmate sentence computations since April, 1990. Id., ¶ 1. Appended to Mr. Farrar's declaration are several attachments, which will be referenced in this Memorandum Opinion as "Att." followed by the appropriate number.

6. The USMS arrested Brown in New York on March 31, 2009, and he remained in federal custody thereafter. Id., Att. 7.

According to the BOP's sentence computation, Brown's 70-month federal sentence commenced on the date he was arrested, March 31, 2009. Resp. Ex. 1, ¶ 12. Brown was granted 27 days of prior custody credit for the time he spent in custody prior to his pretrial release on bond, and he is presently projected to be released on April 4, 2014. Id. The BOP has not awarded Brown credit for any portion of the period from September 27, 2003, the date following his pretrial release, through March 30, 2009, the date prior to his arrest. In this petition for habeas relief pursuant to § 2241, Brown argues that he is entitled to credit for the periods when he was not in custody following his conviction and the imposition of his federal sentence, and during which the execution of his sentence was stayed pending the outcome of his appeal, because he was not timely informed of his voluntary surrender dates by the USMS. Respondent concedes that Brown has exhausted available administrative remedies as to his claim.[2] Accordingly, this matter is now ripe for review on the merits.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to

---

[2] In the context of federal habeas petitions challenging sentence computations, parole determinations, or good time credits calculations, courts have required petitioners first to exhaust their administrative remedies. See United States v. Wilson, 503 U.S. 329, 335-36 (1992) (holding that Congressional changes to 18 U.S.C. § 3568 did not divest the Federal Bureau of Prisons ("BOP") of the authority to compute federal prisoners' sentences and noting that federal prisoners may seek judicial review of these computations after exhaustion of their administrative remedies); United States v. Bayless, 940 F.2d 300, 304-305 (8th Cir. 1991) (refusing to reach petitioner's challenge to computation of his sentence because petitioner had failed to exhaust his administrative remedies with the BOP); United States v. Lucas, 898 F.2d 1554, 1555-56 (11th Cir. 1990) (holding that a dissatisfied prisoner may only avail himself of judicial review after an adverse administrative decision by the BOP regarding his sentence calculation).

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. " [T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no

---

[3]Respondent's Motion to Dismiss for lack of subject matter jurisdiction is unexplained, and his Memorandum of Law sets out no argument concerning his position on that request. Therefore, as it is apparent from his arguments and exhibits that respondent is entitled to the summary judgment he seeks in the alternative, his Motion to Dismiss will be denied as moot.

material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

## III. Analysis

Brown's argument that he is entitled to sentence credit for the 22 months he spent at liberty following the affirmance of his conviction and prior to his arrest is without merit. First, it is apparent that Brown's sentence has been computed in accordance with applicable federal law. The computation of federal sentences is solely within the purview of the BOP. Wilson, 503 U.S. at 335. In any such instance, the BOP must make two separate determinations: (1) the date on which the federal sentence commences, and (2) the extent to which the defendant can receive credit for prior time spent in custody. Chambers v. Holland, 920 F.Supp. 618, 621 (M.D. Pa.), aff'd, 100 F.3d 946 (3d Cir. 1996). In Brown's case, both components of this equation were calculated appropriately.

Pursuant to 18 U.S.C. § 3585(a), a federal sentence commences

> ... on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

To determine when an offender is "received" by the Attorney General, a court must ascertain the sovereign that has primary jurisdiction over the offender. The "in custody" requirement is met only where there is "a significant restraint imposed on one's liberty." Russell v. City of Pierre, S.D., 530 F.2d 791, 792 (8th Cir.), cert. denied, 429 U.S. 855 (1976), citing Hensley v. Municipal Court, 411 U.S. 345 (1973). Here, it is readily apparent that Brown was not "in custody" for any period between the date of his initial release and his arrest, such that the

5

provisions of § 3585(a) would apply. Thus, his sentence was properly commenced on March 31, 2009, the date he was arrested and became "in custody ... awaiting transportation" to his official detention facility.

Awards of prior custody credits are controlled by 18 U.S.C. § 3585(b), which provides:

> (b) Credit for prior custody. - A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences -
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

The "time spent in official detention" required for this provision to apply does not include periods when a defendant is released on his or her own recognizance. BOP Program Statement 5880.28 at 41 - 42. Even a release on a "highly restrictive" condition such as house arrest, electronic monitoring, or home confinement does not qualify as "official detention." Id.. Instead, sentence credit under § 3585(b) is available only for periods when a defendant was detained in a penal or correctional facility and was subject to BOP's control. Reno v. Koray, 515 U.S. 50, 58 - 59 (1995); see also, United States v. Insley, 927 F.2d 185, 186 (4th Cir. 1991) ("Conditions of release are not custody. For purposes of calculating credit for time served under 18 U.S.C. § 3583, 'official detention' means imprisonment in a place of confinement, not stipulations or conditions imposed upon a person not subject to full physical incarceration." ) Here, where it is undisputed that Brown was not incarcerated during the period in question, but

6

instead was living and working in the community, it is apparent that the period did not qualify for prior custody credit. Therefore, Brown's sentence was calculated in accordance with applicable federal law.

Brown argues that he should receive credit for time he did not spend in official detention pursuant to the doctrine of credit for time at liberty, but his position is flawed. In general, a delay in the commencement of a sentence, such as occurred in this case, does not by itself constitute service of the sentence, nor does the convicted individual have an automatic entitlement to time spent erroneously at liberty. United States v. Barfield, 396 F.3d 1144, 1147 - 48 (11th Cir. 2005) (holding that "a convicted person ... who has yet to serve any part of her sentence, is not entitled to credit for time spent erroneously at liberty when there is merely a delay in executing her sentence."); Leggett v. Fleming, 380 F.3d 232, 235 (5th Cir. 2002) ("[A] prisoner is not entitled to a credit when there is merely a delay in the execution of one's sentence."). The doctrine on which Brown relies is an exception to the general requirement that credit may be given only for time spent in official detention, id. at 1147, n. 1, and courts have applied it only in limited circumstances which are not present here. In Ninete v. Thomas, 607 F. Supp.2d 1201, 1204 (D. Or. Jan. 16, 2009), the case upon which Brown principally relies, the defendant was released from custody pending the outcome of his appeal. Id. at 1202. When the conviction was remanded and the district court affirmed the sentence, government officials failed to notify Ninete to surrender. After five months passed, Ninete himself filed a motion to self-surrender with the district court. Although the court granted the motion, another six months elapsed before the BOP designated Ninete's institution. Id. at 1202 - 03. Ninete filed a petition for habeas corpus relief, and the district court ordered that he be credited for the time he spent at liberty

from the date he filed his motion to self-surrender to the date he received surrender instructions. Id. at 1204. The court in Ninete stressed that its ruling hinged on the facts that "petitioner was not imprisoned in a timely manner due to the mistakes of the Government," id. at 1204, and that "when it was apparent to petitioner that the government had forgotten his imprisonment five months following the conclusion of his criminal case, he filed a motion to self-surrender." Id. It noted, "[c]ourts have looked with favor on a defendant's attempt to bring [such] a mistake to the Government's attention." Id., quoting United States v. Martinez, 837 F.2d 861, 865 (9th Cir. 1988).

Courts have declined to extend Ninete to situations where a defendant does not act affirmatively to correct a government mistake. For example, in Bradford v. Rivera, 2011 WL 5827601 (D.S.C. Nov. 18, 2011), aff'd, 471 Fed. App'x 109 (4th Cir. 2012), a convicted federal offender was granted a six-month deferral of his date to report to commence the service of his sentence because he was suffering from incurable cancer and was expected to live no more than one to two years. Id. at *2.[4] In 2008, after petitioner underwent continuing medical treatment and started his own towing business, the district court requested that the BOP designate him to either a correctional or a medical facility. Petitioner was designated to FCI Estill with a surrender date of September 4, 2008. On December 18, relying on Ninete, petitioner filed a § 2241 petition requesting either dismissal of the charges or re-sentencing to time served, on the bases of the BOP's delay in designating him to a federal institution to begin service of his sentence and his own efforts to turn his life around. Id. In its Order dismissing the petition with

---

[4]Copies of the district court's opinion in Bradford as well as all other unpublished opinions cited in this Memorandum Opinion are contained in Respondent's Exhibit 2.

8

prejudice, the district court found Ninete distinguishable:

> In Ninete, the court gave that defendant credit for the time he spent at liberty after concluding that he 'was not imprisoned in a timely manner due to the mistakes of the Government,' and further that the delay was 'not attributable' to the defendant. Ninete, 607 F.Supp.2d at 1204. Here, on the other hand, the delay in designating a facility to start Petitioner's sentence was attributable to and resulted from, at least in part, Petitioner's own medical condition, i.e., his cancer diagnosis. In addition, Petitioner in the case at bar did not file a motion to self-surrender, nor is there any evidence or allegations that he took any action to self-surrender or begin his sentence until the BOP notified him that it had designated a facility. Accordingly, the Court concludes ... that Petitioner has not shown that he is entitled to any credit for the time he spent at liberty before commencement of his sentence.

Bradford, 2011 WL 5827601 at *4, footnote omitted; accord, Barfield, 396 F.3d at 1146 - 48 (declining to credit a defendant's sentence with eight years she spent at liberty after falsely indicating she suffered from AIDS because "[a] delayed sentence, like Barfield's, is still subject to be executed."); Woodman v. Shartle, 2010 WL 5420143 at * 4 (N.D. Ohio Dec. 22, 2010) (a convicted defendant's § 2241 petition for credit against his sentence for four years he erroneously spent at liberty after his notice to surrender was sent to a former address was denied where "Petitioner has not presented evidence that he tried to self-surrender, prior to receiving his surrender instructions ... Although a person is not legally required to report to jail, this factor was material to the Ninete court because it made it possible for the court to calculate the time to be credited.").

This case is not controlled by Ninete. Here, while the delay in the execution of Brown's sentence apparently was caused by the oversight of either the Tenth Circuit or the USMS, nothing in the record indicates that Brown took any steps whatever to mitigate that delay, or even to check into the status of his sentence. Clearly, he made no motion to self-surrender, which was

9

the action on Ninete's part that the Court in his case found determinative. To be sure, Brown alleges in his petition that he "honestly does remember that 11-18-08," while he was at the U. S. Attorney's Office in New York to discuss his possible cooperation in another case, "someone mentioned" to the Assistant U. S. Attorney that Brown "was supposed to self-surrender to a federal prison at Morgantown, West Virginia" that very day, but "the federal officials ... told the petitioner and counsel not to worry about" it. Pet. at 4. However, petitioner offers nothing to support this self-serving allegation. Moreover, even assuming it to be true, it shows that Brown aware of his self-surrender date by November 18, 2008, but he took no steps to effectuate that surrender before he was arrested on March 31, 2009. Such inaction on Brown's part forecloses application of Ninete to his situation.

Brown's reliance on the holdings of Vega v. United States, 492 F.3d 310 (3rd Cir. 2007) and Eakman v. Bureau of Prisons, 2009 WL 1916237 (W.D. Pa. June 30, 2009) is also misplaced. In Vega, a petitioner was erroneously released by state authorities when he should have been delivered to the USMS to begin his service of a federal sentence. The Court in Vega thus was concerned with a violation of the petitioner's "right to serve his sentence continuously and in a timely manner, and to resettle after he has served his sentence without the fear that the government, at some undetermined point in the future, will reincarcerate him." Vega, 493 F.3d at 318. That case is factually distinguishable from the case at bar, since Brown was never in custody from the time his conviction and sentence were affirmed until he was arrested. Similarly, in Eakman, a petitioner was ordered to serve a sentence of one year and one day in a Community Corrections Center ("CCC"). However, the USMS did not request a designation for the petitioner for two years, and during that time a change in BOP policy precluded petitioner's

eligibility for CCC placement, so he was transferred to a federal prison to serve the remainder of the sentence. The court held based upon Vega that Eakman should receive credit for his time spent at liberty because but for the USMS's error, he would have been able to serve his entire sentence at a CCC before the change in BOP policy went into effect. Eakman at ** 13 - 14. The Eakman Court was careful to point out that its holding was not to be applied "in every case where there has been a delayed commencement of sentence," but instead is "limited to the specific facts of this case." Id. at * 17. No extended discussion of the factual distinctions between Eakman's situation and the case at bar is necessary to determine that Eakman is inapplicable here.

In his reply to the respondent's motion for summary judgment, Brown essentially revisits his earlier arguments. For example, Brown insists that he should be credited with the time he spent erroneously at liberty because the delay in the issuance of his self-surrender date was the government's fault, and he "had no obligation to do anything regarding a voluntary self-surrender date...." Reply at 2. That is true, but Brown's failure to take more affirmative responsibility is what fails to distinguish his case from the typical situation where a delay in the commencement of a term of imprisonment does not entitle the defendant to sentence credit, see Barfield, 396 F.3d at 1147 - 48, from those rare instances where a defendant's more extraordinary efforts to make the government aware of an oversight have been held to warrant more favorable consideration. Ninete, 607 F. Supp.2d at 1204. Brown also reiterates the argument that he was led to believe that he "need not worry" about his self-surrender date by officials at the U. S. Attorney's Office in New York, Reply at 2, but this position remains both unsupported and unavailing for the reasons previously discussed. Brown cites two additional authorities, Clark v.

Floyd, 80 F.3d 371 (9th Cir. 1995) and Contreras v. Shartle, 2001 WL 282437 (N. D. Ohio 2001), but both involved situations where defendants were erroneously released from custody rather than, as here, where the commencement of custody was delayed, so they are readily distinguishable and do not control. Lastly, Brown concludes his reply with a prayer for the appointment of counsel and an evidentiary hearing. Reply at 7. Because respondent has demonstrated his entitlement to summary judgment, both of those requests will be denied as moot.

### IV. Conclusion

For the foregoing reasons, respondent's motion for summary judgment will be granted, and summary final judgment will be entered in his favor. Respondent's motion to dismiss and petitioner's requests for the appointment of counsel and an evidentiary hearing will be denied as moot. An appropriate Order shall issue.

Entered this 13th day of November 2012.

/s/ *signature*
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia